UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD EHRHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25 CV 898 RWS |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Ronald Ehrhardt brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. For the reasons set forth below, I will reverse the decision of the Commissioner and remand this matter for further consideration.

## Procedural History

Plaintiff Ronald Ehrhardt was born on June 29, 1987. (Tr. 252)[1] He is currently 39 years old. Ehrhardt completed three years of college. (Tr. 296) In the past several years before he applied for disability benefits Ehrhardt worked as a warehouse supervisor and managed up to 50 employees. (Tr. 306-314, 325, 46-48) Ehrhardt had employment earnings of $36,964.10 in 2019 and $32,279.18 in 2020. (Tr. 284) Ehrhardt has not engaged in substantial gainful employment since January 1, 2021, the alleged onset date of his disability. (Tr. 21)

Ehrhardt protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on September 6, 2022. (Tr. 18, 250) He alleged that his disability began on January 1, 2021. (Tr. 18, 252) Erhhardt's applications were initially denied on June 6, 2023. (Tr. 95) The applications were denied again upon reconsideration on February 8, 2024. (Tr. 123) On March 19, 2024, Ehrhardt filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 169) The ALJ held hearings on August 24, 2024 and on February 10, 2025. (Tr. 39-83)

In his Function Report, completed on August 7, 2023, Ehrhardt asserted that he was unable to work based on panic attacks and anxiety. (Tr. 357) His Disability Report, completed on March 1, 2023, lists the following medical

[1] Citations to the transcript (Tr.) use the page numbers assigned to the documents by the Commissioner.

conditions that limit his ability to work: generalized anxiety disorder; major depressive disorder; post-traumatic stress disorder; essential tremors; social anxiety with panic attacks; and sleep issues. (Tr. 295) Ehrhardt takes the following medications: clozapine; cyclobenzaprine; gabapentin, lamotrigine; medical marijuana; and nicotine patch. (Tr. 298). At the hearing before the ALJ, Ehrhardt's counsel stated that Ehrhardt's case included a combination of physical and mental impairments. (Tr. 43) Ehrhardt was in a motor vehicle accident in August 2022 and he experienced head injuries and "major" concussion, neck injuries, and left shoulder and rib injuries. (Id.) Ehrhardt has "major depression with psychosis issues" including documentation of hallucinations - hearing voices. He has a diagnosis of anxiety and there is a "mention of PTSD in medical records." There is also documentation of hand tremors which are worse in his dominant right hand. (Id.) Ehrhardt's counsel asserted that the frequency of "mental health difficulties" and the difficulties arising from the ongoing tremors in his right hand precludes Ehrhardt from working. (Tr. 43-44)

Because of Ehrhardt's mental health difficulties, Erhardt's mother has been appointed as his legal guardian. (Tr. 44 and 57) Ehrhardt testified he has tremors every day, some days are more manageable than others. (Tr. 49-50) His hand tremors make it difficult to eat food or to do "fine" things on his phone. (Tr. 49) He eats a lot of sandwiches and similar items because he has difficulty keeping

food on his utensils. (Tr. 51) His tremors can be triggered or made worse by load noise, "sensory stuff," and when he gets his heart rate up. (Tr. 50) In addition, sometimes his anxiety and stress in social situations make the tremors in his hands worse. (Id.) He testified that he still has physical limitations from his auto accident including that his left shoulder and left side of his neck "seize up." That causes him discomfort which limits his ability to reach above his chest with his left arm or keep it in one position for very long. (Tr. 52)

Ehrhardt testified that he has panic attacks and major depression and that he was hospitalized for hallucinations - hearing voices. (Id.) He asserted that he has difficulty remembering and concentrating. (Id.) His anxiety and panic attacks are usually triggered when "there's a lot going on if there were more things going on that I could probably manage or people around that I could tolerate." (Tr. 53) When triggered he gets shaky, has a hard time breathing or catching his breath or speaking. (Tr. 54) He gets irrational fear which makes interacting with people "just terrifying." (Id.) To address these episodes he has to get away from people and get somewhere quiet. (Id.) It takes him a few hours to get over an episode. (Id.) He testified that he has panic attacks every two or three days. (Tr. 55)

On February 10, 2025, a supplemental hearing was held at which a medical expert, Dr. Ann Monis, testified regarding her review of Ehrhardt's psychological medical records. Dr. Monis opined that Ehrhardt's record reflects that he has low

grade depression (dysthymia) and occasional major depressive disorder. (Tr. 67) In Dr. Monis' opinion, Ehrhardt had mild limitations in understanding, remembering or applying information. Ehrhardt had moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 67) Based on these observations, Dr. Monis opined that Ehrhardt's residual functional capacity would be limited to occasional interaction with the public and coworkers, and his concentration, persistence, and pace would be limited to simple tasks with no other mental limitations (Tr. 68) If these limitations are followed, Dr. Monis testified that Ehrhardt would avoid work absences and be off task daily no more that 5% of the time. (Id.) Dr. Monis did not consider any of Ehrhardt's physical limitations in reaching her conclusions about his ability to work. (Tr. 70)

On March 25, 2025, the ALJ issued a decision finding that Ehrhardt was not disabled and that he could perform light unskilled work. The ALJ found that Ehrhardt could perform jobs that exist in significant numbers in the national economy. (Tr. 29) On May 15, 2025, the Appeals Council denied Ehrhardt's request for review. (Tr. 1) The ALJ's decision is now the final decision of the Commissioner. 42 U.S.C. §§ 405(g).

In this action for judicial review, Ehrhardt contends that the ALJ failed to properly evaluate medical opinion evidence. Ehrhardt requests that I reverse the

Commissioner's final decision and remand this matter for further evaluation. For the reasons that follow, I will grant Ehrhardt's request to remand this matter for further proceedings.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Ehrhardt's statement of material facts (ECF # 16) which have all been admitted by the Commissioner. (ECF # 19-1). Additional facts will be discussed as needed to address the parties' arguments.

**Discussion**

A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[2] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. If the impairment is not equivalent to a listed impairment,

[2] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

then the Commissioner proceeds to the fourth step to determine whether the claimant can perform his past relevant work.[3] If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

[3] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such

> matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[4] When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B. ALJ's Decision

In his written decision, the ALJ found that Ehrhardt had not engaged in substantial gainful activity since January 1, 2021, the alleged onset of his disability. (Tr. 21) The ALJ found that Ehrhardt had the following severe impairments: major depressive disorder with psychosis; residuals from traumatic head injury; obesity; and obstructive sleep apnea. (Id.) The ALJ found that Ehrhardt has a mild limitation in understanding, remembering, or applying information. He has a moderate limitation in interacting with others. He has

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

moderate limitations in concentrating, persisting, or maintaining pace and moderate limitations in adapting or managing oneself. (Tr. 22) The ALJ determined that Ehrhardt's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21) The ALJ found Ehrhardt to have the residual functional capacity (RFC) to perform light work with the following limitations:

> [E]xcept [Ehrhardt is] unable to climb ladders, ropes or scaffolds, and he can occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, and balance. He is limited to **frequent** use of his hands for feeling, fine manipulation/fingering and gross manipulation/handling. He is to avoid exposure to extreme noise. He is to avoid exposure to extreme cold and extreme heat. He is to avoid moderate exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated area ("moderate" defined as any work environment "noisier" than a typical office environment). He is to avoid exposure to extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery. He is limited to occupations that involve only simple, routine and repetitive tasks with only occasional changes in the work setting with no more than occasional interaction with the public and with co-workers.

(Tr. 23) (emphasis added). The ALJ determined that Ehrhardt did not have past relevant work. (Tr. 28) The ALJ consulted a vocational expert (VE) to assess whether jobs within Ehrhardt's RFC existed in significant numbers in the national economy. (Tr. 28-29) The VE identified the jobs of a warehouse checker (3,000 positions); router (74,000 positions); and final assembler (22,000 positions) which could be performed based on Ehrhardt's RFC. (Tr. 29) The ALJ therefore

determined that Ehrhardt was not disabled within the meaning of the Social Security Act. (Id.)

C. Ehrhardt's Objection to the ALJ's Decision

Ehrhardt challenges the ALJ's RFC determination regarding Ehrhardt's tremors and his ability to use his hands to do unskilled light work. The ALJ's RFC states that Ehrhardt "is limited to ***frequent*** use of his hands for feeling, fine manipulation/fingering and gross manipulation/handling." (Tr. 23) (emphasis added). At the second hearing on February 10, 2025, the ALJ slightly altered the RFC hypothetical when examining the VE. He hypothesized that this "individual is limited to no more than ***frequent*** use of both hands for handling, fingering, and feeling." (Tr. 77) (emphasis added). The VE testified that jobs existed in the economy based on the ALJ's RFC hypothetical. (Tr. 78) However, the VE testified that if the RFC were amended to limit the individual to no more than ***occasional*** use of the dominant right hand for handling, fingering, and feeling, then there were not any jobs in the national economy that individual could perform. (Tr. 82)

Ehrhardt contends that the medical evidence established that he is limited to the ***occasional*** use of his right hand for gross manipulation/handling. In support of his position, Ehrhardt points to the February 8, 2024, medical review of Michael O'Day, D.O., a medical consultant employed by the Commissioner, regarding

Ehrhardt's ability to use his hands. Dr. O'Day opined that Ehrhardt's condition "limited handling to frequent on left and ***occasional*** on right due to hand tremors." (Tr. 116 and 119) If the ALJ had adopted Dr. O'Day's opinion concerning the occasional use of his right hand, Ehrhardt would be conclusively disabled because he could not perform any job in the national economy according to the VE. Ehrhardt asserts that Dr. O'Day's opinion is supported by Ehrhardt's testimony at his hearing that he has tremors every day and that loud noises and his anxiety make the tremors worse. (Tr. 49-50) He testified that his tremors mainly effect his right side/ hand. His hands will shake so much that he is not able to do fine movements with his hands. The tremors prevent him from keeping food on eating utensils. (Tr. 50-51) In addition, sometimes his hands shake so much that he is unable to properly press buttons or digits on his cell phone and unable to type on a computer keyboard. (Tr. 51)

Ehrhardt argues that the ALJ's use of the term ***frequent*** versus ***occasional*** in the RFC is unsupported because the ALJ "failed to properly evaluate the supportability and consistency of the medical opinions" regarding Ehrhardt's hand tremors.

The ALJ acknowledged that Dr. O'Day opined that Ehrhardt was limited to ***occasional*** handling with his right hand was supported by the record. (Tr. 26) He also addressed the June 6, 2023, opinion of Dr. Paul Ross, D.O., a medical

consultant employed by the Commissioner, who opined that Ehrhardt had the ability to perform light work. (Tr. 91) In his review, Dr. Ross noted that Ehrhardt had "limitations" due to hand tremors. (Tr. 89- 90) However, Dr. Ross did not quantify these limitations. The ALJ acknowledged this shortcoming in his decision noting that this omission "erod[ed] some support" for Dr. Ross's opinion. Despite the unspecified limitations caused by hand tremors in Dr. Ross's report, the ALJ concluded that these unspecified limitations in combination with Dr. O'Day's ***occasional*** handling limitation supported a finding that Ehrhardt could perform light work. In addition, in support of his RFC determination, the ALJ stated that evidence "submitted subsequent to the June 3, 2023 opinion indicates diminished grip and pinch strength supporting a frequent limitation on manipulative activities." (Tr. 26) But the ALJ does not explain how diminished grip and pinch strength supports a finding that Ehrhardt can ***frequently*** handle/manipulate objects. The ALJ also noted that Ehrhardt had been prescribed Propranolol which "has helped improved the tremors" but the ALJ did not quantify that improvement. Nor did he address the fact that the Propranolol dosage was reduced on September 4, 2024, because Ehrhardt was experiencing hypotension. The ALJ did not discuss what effect the dosage reduction had on Ehrhardt's tremors.

An ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "The first two factors—supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)). Under the revised regulations, "treating physicians are not entitled to special deference." Id. (citing 20 C.F.R. § 404.1520c(a)).

A claimant's allegation of an ALJ's "deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case. An ALJ's reasoning need only be clear enough to allow for appropriate judicial review. The ALJ's brevity is not reversible error." Grindley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021) (internal quotations and citation omitted).

The ALJ's reasoning in this matter is not sufficient to allow judicial review. In assessing Ehrhardt's tremors the ALJ failed to adequately address the supportability and consistency of his conclusion that Ehrhardt was limited to the ***frequent*** use of his right hand for gross manipulation/handling rather than the ***occasional*** use of his right hand for gross manipulation/handling. The ALJ needs

to resolve the discrepancy between Dr. O'Day's ***occasional*** right hand use limitation, Dr. Ross's undefined hand use limitations caused by tremors, Erhardt's testimony regarding the limited use of his right hand, and the ALJ's RFC determination that Ehrhardt has only a ***frequent*** hand use limitation rather than an ***occasional*** use limitation of his right hand. This issue is outcome determinative. If Erhardt is limited to the ***occasional*** use of his right hand, the VE stated there were not any jobs that Erhardt could perform.

As a result, I find that the RFC is not supported by substantial evidence in the record and this case will be remanded for further proceedings.

Accordingly,

**IT IS HEREBY ORDERED that**, pursuant to sentence-four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings in accordance with this memorandum and order.

A separate Judgment is entered herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2026.